### CHAS. SMITH V. STATE OF OHIO.

**1. TRANSFER FROM ONE COURT TO ANOTHER.**

The prosecuting attorney is authorized under sec. 6367, Rev. Stat., in certain counties to proceed, in prosecution in which the probate court has jurisdiction, in either the probate, or the common pleas court, but this does not authorize a transfer of any such prosecution from the common pleas to the probate court.

**2. BASIS OF CRIMINAL PROSECUTION.**

No person can be placed on trial for a crime against the law of this state until he has been charged with the commission of such crime upon oath or affirmation; the mere information of the public prosecutor is insufficient. Art. 1, sec. 14, Const.

**3. MISDEMEANOR—JURISDICTION.**

Where a person is prosecuted under the statute for misdemeanor, punishable by imprisonment and fine, he may at any time raise the question of jurisdiction.

HAYNES, J.

In the case of *Charles Smith* v. *The State of Ohio*, the petition in error is prosecuted for the purpose of reversing the judgment of the court of common pleas, which judgment affirmed the judgment of the probate court of this county, wherein the plaintiff in error, Charles Smith, was prosecuted for misdemeanor, convicted and sentenced for punishment, both fine and imprisonment, I believe.

The record filed and attached to the petition in error, filed in the court of common pleas, discloses that at the November term, 1891, the following entry was made on the journal of the court of common pleas:

"The State of Ohio v. Charles Smith, indictment for allowing saloon to be open on Sunday and selling intoxicating liquor on Sunday."

Also the following entry in same case on November 30, 1891:

"By consent of attorneys, this cause is transferred to the probate court."

Attached to that petition is also a series of entries in the journal of the probate court, the first of which is as follows:

"The State of Ohio v. Charles Smith, December 8, 1891. This day the transcript of the proceedings had in the common pleas court in this cause was filed herein. Said Charles Smith being charged with allowing saloon to be open on Sunday and selling intoxicating liquor on Sunday."

"December 14, 1891. This day came T. H. Kellogg, prosecuting attorney, and filed herein information in both indictments upon the transcripts from the court of common pleas, heretofore filed."

It then notes continuances from time to time until April 13, 1892, when it recites that:

"This day came the State of Ohio by J. R. McKnight, prosecuting attorney, and the defendant, Charles Smith, in person and by his counsel, and thereupon the defendant filed a motion for continuance, on consideration whereof the court overruled said motion. Thereupon the said defendant filed a motion to quash the first count of the information which was argued by counsel, and etc., and was overruled."

Thereupon a jury was called, trial had, and a verdict was returned:

"We, the jury in this case, find the defendant, Charles Smith, guilty in manner and form as he stands charged in the first and second counts of the information."

Afterwards a motion for a new trial was made and argued and overruled and sentence was imposed upon the defendant. Whereupon, the court asked the defendant if he had anything to say why judgment should not be pronounced

**against** him, and he having nothing to say, "it is therefore ordered and adjudged that on the first count of information, the said Charles Smith pay a fine of $25.00 and the costs of these proceedings taxed at $—— and be confined in the county jail 10 days, and until the fine and costs are paid. And on the second count of said information, said Charles Smith pay a fine of $50.00 and the costs of this proceeding taxed at $—— and be confined in the county jail 20 days, and until the fine and costs are paid."

With that, a bill of exceptions was taken upon the overruling of the motion for a new trial, and the case was presented to us at Toledo for an order suspending the judgment until the case could be heard here, and now the case has been argued by counsel and submitted for decision.

I may say, without going through in detail, it appears that the indictment was returned by the grand jury. Beyond that, it nowhere appears that the defendant was ever arrested upon that, nor upon a charge made upon an affidavit of any party before an examining magistrate.

So far as appears by the record, an indictment was found by the grand jury upon evidence taken before it, and that indictment having been returned to the court of common pleas, there proceedings were had which I have stated.

The first question that arises here is whether the probate court, by virtue of this proceeding, obtained any jurisdiction whatever to prosecute the defendant for the alleged offenses. The statute, sec. 5467, provides:

"All recognizances which shall or may be taken by any justice of the peace in said counties, or other officers in said counties authorized to take the same, and all transcripts of criminal cases within the jurisdiction of said probate court, as defined by law, may be returned either to the probate court or the court of common pleas of said counties; and the same shall be returned to one or the other of said courts forthwith after the commitment of the person charged with the offense, or after the taking of a recognizance for his appearance before one or the other of said courts."

Thereupon, it provides that the prosecutor may, at his election, proceed in either of said courts with the prosecution. That is the case in which the probate court has jurisdiction.

"The accused shall be bound to appear therein and to answer his recognizance, and on demand by the prosecuting attorney, the probate judge, or clerk of the court of common pleas, shall certify the recognizance and all other papers in the case, returned to his court by the justice or other officer, to the court in which the prosecuting attorney elects to proceed."

That is the only statute we find. There is no other authority for the transfer of a criminal case from the court of common pleas to the probate court of this county.

There is a statute, sec. 6454a, which authorizes the transfer of certain cases in Cuyahoga county from the court of common pleas to the probate court. The transfer, therefore, of this case in the manner stated in the record by the court of common pleas of this county to the probate court, conferred, in our judgment, no jurisdiction whatever upon the probate court to proceed with the prosecution.

Section 6457 has a provision:

"The prosecuting attorney of any such county may file his information originally in the probate court, without a preliminary hearing before an examining court, upon the proper affidavits being filed therein, and the judge shall issue his warrant for the arrest of the defendant, who, when arrested, shall be taken before said judge, and thereupon, if not discharged, be recognized to appear at the next term of court, or in default thereof, to be committed to the jail of the proper county."

It will be observed there that the condition upon which the prosecuting attorney may file an information originally in the probate court and proceed to have the party arrested and tried in that court, is when proper affidavits are filed charging the party with the crime. The propriety of that will be seen by referring to the decision of the Supreme Court in the case of *Gates* v. *State of Ohio*, 3 O. S., 293, decided in 1854. The Supreme Court decided that "the general

rule established by 'an act defining the jurisdiction and regulating the practice of the probate courts' is that prosecutions shall originate in a proceeding before some officer who can hear testimony and decide upon its sufficiency, to put the accused on his defence before the probate court.''

At that time all prosecution should be commenced before an examining magistrate and from that, come up to the probate court, but with the passage of the act which is embodied in section 6457, the prosecuting attorney was allowed to file an original information in the probate court, when the proper affidavits had been filed, so that that court occupied a double position of probate court and examining court so far as jurisdiction is concerned.

In 1880, a case came before the Supreme Court which led to a very full discussion of the question, following some other decisions that had been had at that time, followed in the Gates case, *supra*. There is quite a full discussion of it in the case of *Eichenlaub* v. *State* 36 O. S., 140. That was the case in which there had been sworn out a search warrant, and certain property had been found; but the proceedings with the search warrant were not in accordance with the statute. The prosecuting attorney of the court, however, filed an information in court, the party was arrested and brought before the court, tried and found guilty of receiving stolen property. The question came up as to whether that court had jurisdiction, or could have jurisdiction. This is the syllabus of the case:

"One charged with the commission of a misdemeanor was prosecuted by information, and the information being unsupported by oath or affirmation, the accused moved to quash it for that cause, which motion was overruled. *Held*, that in overruling such motion, there was error."

It is a case that is quite fully discussed and cites Art. first, sec. 14, of the Constitution.

Without going into the reading of the case, it is sufficient to say that the gist of the case is embodied in the following citation from the opiion of the court:

"We regard the section quoted (Art. 1, section 14) as asserting this important principle, that no person shall be placed on trial for a crime against the law of this state upon the mere information of a public prosecutor, nor until he has been charged with the commission of such crime upon oath or affirmation. An indictment being founded upon oath or affirmation, of course, satisfies the requirements of the constitution."

It will be seen, therefore, that there was no law for the filing of the indictment that was returned into court of common pleas in the probate court, if, indeed, it was ever filed there. It was among the papers loosely, and it is assumed that it was filed there. We think the paper itself gave the court no jurisdiction, and in that position we are fortified by the case that was decided in the Supreme Court of this state in *D. & W. Rd.* v. *Marshall*, 11 O. S., 497. That action was in the nature of a civil action. It appeared that the Dayton & Western Railroad Co. had entered upon some land used it for railroad purposes under an agreement stipulating that they should pay for the land. Certain arbitrators were chosen, but they were unable to agree. Thereupon the owner of the property, Hugh Marshall by name, brought an action by way of an injunction to compel the parties to pay the price of the land, or cease to use the road. The railroad company demurred to the petition, and afterwards such proceedings were had that the following entry was made:

"This cause coming on to be heard upon the demurrer of the defendant to the complainant's bill, and the court being advised, do overrule the demurrer, and thereupon, by consent of parties, the defendant files his answer and submits to the following decretal order, to-wit: (It will be observed that the railroad company filed its answer, and it consented to the decree which was made.) "That the defendant shall, within sixty days from this date, by their proper officer, to-wit, the president of the company, make out a statement containing a specific description of each parcel of the complainant's property and rights specified in the bill, which they have taken and occupied in the construction and for the use of their railroad, and within the time aforesaid, they file the same with the probate judge of this county

preparatory to an assessment of the damages sustained by the complainant by reason of said appropriation and use of his property for the purpose aforesaid, and the compensation which he ought to receive therefor, and further equities be reserved until the next term of this court, to which time this cause is continued."

The company afterwards refused to comply with the order, and, it seems, they had a mandamus by way of contempt.

Thereupon, the court raised the question whether the probate court had jurisdiction, or could have jurisdiction to hear and determine that case.

The first of the syllabus of the case is as follows:

"The probate court, under the act of April 30, 1852, to provide for compensation to owners of property taken for use of corporations, has a special and limited jurisdiction to be exercised in the cases, and in the mode prescribed in the act; and that court cannot, under an order of the court of common pleas, and to carry into effect that order, take jurisdiction of a case, or proceed in a mode not authorized by the act."

After some discussion of the question, the court say:

"Assuming these views to be correct, as applicable to an ordinary proceeding under the act, it is manifest that the present proceeding can only be sustained on the ground that it was had in virtue of the decretal order of the court of common pleas, in the suit in chancery pending between the parties. This leads to the inquiry whether it was competent for the probate court to exercise a jurisdiction conferred, not by the statute, but by the order of another court. And we think it was not within the competency of the court of common pleas to confer, or the probate court to acquire and exercise, jurisdiction in this mode."

That is to say, the court could only have jurisdiction in the case by the exercise of the statute. It received its jurisdiction in that manner.

It will be observed in the statement of the case that no question was raised as to the jurisdiction of the court before the trial. We have had occasion to discuss somewhat the rules that should govern a court in a case of that kind, or what the rights of the state might be in that respect.

Section 5472 of the statute provides that:

"The provisions governing criminal proceedings in the court of common pleas shall, so far as applicable, govern like proceedings in the probate court."

Provision is made in the statutes governing proceedings in criminal cases for the filing of motions, pleas in abatement and demurrers and after trial, after a verdict (sec. 7353):

"A motion in arrest of judgment may be granted by the court for either of the following causes:
1. That the grand jury which found the indictment had no legal authority to inquire into the offense charged, by reason of such offense not being within the jurisdiction of the court.
2. That the facts stated in the indictment do not constitute an offense."

Now, light may be thrown on this from the case of *Carper* v. *State*, 27 O. S., 572, wherein Carper had been indicted for playing a certain game called draw poker and had pleaded guilty to the accusation and afterwards he raised some objections to being punished for the offense.

The court discussed some of the effects of these statutes, and says,

"By section 195 (which is now in the section I have read, 7353), he may plead in arrest of judgment.
1. That the grand jury which found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court."

And they say:

"We suppose, notwithstanding the plea of guilty, the defendant may object to the jurisdiction of the court, or the grand jury, over the subject-matter, or that no offense was charged against him; but not for any defect of form or manner of stating the facts, if there was a substantial charge of an offense "

We suppose it to be a rule of law very well established that consent of parties cannot confer jurisdiction of the subject-matter upon a court, and we are

clearly of the opinion from these authorities and the general principles of law, that where a person is prosecuted under the statutes for misdemeanor punishable by imprisonment and fine, that he may at any time raise the question as to the jurisdiction of the court over the suit in which he is convicted.

That question having been raised and submitted to the court, we hold there is only one conclusion to be arrived at in this case, and that is, that as shown in the record, the probate court obtained no jurisdiction whatever to prosecute the defendant for this offense; in other words, that it obtained no jurisdiction to hear and determine the alleged offense set out in the information that was filed by the prosecuting attorney. If our position is correct in that respect, the alleged errors that occurred during the trial are of no moment whatever.

The court of common pleas having affirmed the judgment of the probate court, the order of this court will be that the judgment of the court of common pleas be reversed, and, proceeding to render the judgment that the court of common pleas should have rendered, the judgment of the sentence of the court of the probate court will also be reversed and an order will be made directing that court to dismiss the information for the reason that it has no jurisdiction whatever to hear and determine the question raised in it. The costs that were made upon the petition in error in the court of common pleas and the costs made upon the petition in error in this court, will be adjudged against the state, the probate court having no jurisdiction there can be no adjudication of the costs in that court by any court.

*S. M. Young*, attorney for plaintiff in error.

*J. R. McKnight*, prosecuting attorney.